**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| JUMPSTART COMMUNICATIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge |
| vs. | ) | |
| | ) | Case No. |
| RYAN V. JUMPER and | ) | |
| JUMPSTART COMMUNICATION LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

For its Complaint against Defendants Ryan V. Jumper ("Defendant Jumper") and Jumpstart Communicatio**n** LLC ("Jumpstart Communicatio**n**"), (collectively "Defendants"), Plaintiff Jumpstart Communication**s** LLC ("Plaintiff" or "Jumpstart Communication**s**") alleges as follows:

**INTRODUCTION**

Making good on his threat to "burn this motherfucker to the ground," Defendant Jumper—a current member of Jumpstart Communication**s** and its former CEO—intentionally and willfully began a competing company with a *virtually identical* name and *identical* logo. To ensure there is nothing left of the company he co-founded, Defendant Jumper not only stolen money from Jumpstart Communication**s**, but he and his competing company, Jumpstart Communicatio**n**, also conspired to commit mail fraud and wire fraud to further their effort to gain access to Jumpstart Communication**s**'s money, in further violation of federal law—and in further violation of a court order. Even still, Defendants work to destroy Jumpstart Communication**s** by hiring its employees,

attempting to onboard its customers, and damaging its relationships with key members of the trade, among other things.

## THE PARTIES

1.      Jumpstart Communications is an Indiana limited liability company formed in July 2020 with its headquarters and principal place of business located in Fort Wayne, Indiana.

2.      Defendant Jumper is a current member of Jumpstart Communications and its former Chief Executive Officer.

3.      Defendant Jumpstart Communication is an Indiana limited liability company formed in December 2021. According to publicly available documents filed with the Indiana Secretary of State, Defendant Jumper is the President of Jumpstart Communication.

## JURISDICTION AND VENUE

4.      The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because Jumpstart Communications asserts federal claims under the Declaratory Judgment Act (28 U.S.C. § 2201), the Lanham Act (15 U.S.C. § 1125), and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C § 1964).

5.      The Court has supplemental jurisdiction over Jumpstart Communications's state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Venue is proper in the Northern District of Indiana under 28 U.S.C. § 1391(b) because Defendants reside in this judicial district, and a substantial part of the events or omissions giving rise to claims occurred in this judicial district.

## BACKGROUND

*Jumpstart Communications is founded in 2020 and quickly achieves an annual revenue of more than $10,000,000*

7.    Jumpstart Communications is a telecommunications construction company founded by Defendant Jumper and his wife, Erin O'Donnell ("Jumpstart Communications's Co-Owner"), who are Jumpstart Communications' only members.

8.    Jumpstart Communications presently employs between 50-100 individuals and serves customers in Indiana, Ohio, Kentucky, Missouri, and Michigan.

9.    Jumpstart Communications has a website (https://jumpstartcommunications.net/home), a Facebook profile (https://www.facebook.com/jumpstarttelecom), and LinkedIn page (https://www.linkedin.com/in/jumpstarttelecom)—each of which bear its logo (the "Logo"):



10.    Despite being formed less than five (5) years ago, Jumpstart Communications has experienced tremendous growth, with its 2023 revenue exceeding **$10,000,000**.

11.    From Jumpstart Communications's inception until on or about July 16, 2024, Defendant Jumper served as its Chief Executive Officer.

*In or around April 2024, Defendant Jumper, who previously struggled with drugs, relapses, threatens to "burn this motherfucker [i.e., Jumpstart Communication**s**] to the ground"—and almost does*

12.    Beginning in April 2024, Jumpstart Communication**s** noticed erratic and concerning changes in Defendant Jumper's behavior. Examples of Defendant Jumper's erratic and concerning behavior include:

    a.    Jumpstart Communication**s**'s security camera captured Defendant Jumper removing a bag of drugs from a truck. After being confronted by an employee, Defendant Jumper turned off the security cameras and changed the password on the security cameras. On another occasion, an employee found a crack pipe in a work truck previously used by Defendant Jumper;

    b.    Defendant Jumper unilaterally changed the password on the Capital One business account and disconnected the Capital One business account from QuickBooks, when employees of Jumpstart Communication**s** have Capital One business credit cards that need to be timely paid;

    c.    Defendant Jumper locked the business's joint business checking and joint business money market accounts, access to which Jumpstart Communication**s** needs to pay its employees and its bills;

    d.    Defendant Jumper changed the password on the business email account of Jumpstart Communication**s**' co-owner, O'Donnell, and locked her company credit card;

    e.    Defendant Jumper unilaterally changed the door codes at one of Jumpstart Communication**s**'s locations;

    f.    Defendant Jumper unilaterally changed the password to the Jumpstart Communication**s**'s admin email account'

    g.    Defendant Jumper unilaterally locked Jumpstart Communication**s**' Verizon account and removed Communication**s**'s Co-Owner as an authorized user;

    h.    Defendant Jumper locked Jumpstart Communication**s**'s Co-Owner out of the Capital One business account;

i. Defendant Jumper unilaterally changed Jumpstart Communication**s**'s password to in Biz/Access Indiana, which is necessary for Jumpstart Communication**s**'s to access to file business entity reports and to pay estimated taxes. Defendant Jumper then removed Jumpstart Communication**s**'s Co-Owner as a governing individual on Jumpstart Communication**s**'s Secretary of State documents; presented those new documents to Chase Bank on May 23, 2024; and had Jumpstart Communication**s**'s Co-Owner removed from Jumpstart Communication**s**'s bank account. When Jumpstart Communication**s**'s Co-Owner corrected these documents and requested Chase Bank add her back to the account, Chase Bank's legal department froze the account for further investigation;

j. Jumpstart Communication**s**'s business accountant advised Jumpstart Communication**s**'s Co-Owner that he had been threatened by Defendant Jumper and would not continue as Jumpstart Communication**s**'s accountant if Defendant Jumper's behavior continued;

k. Defendant Jumper stated he is starting a new company and will "bury" Jumpstart Communication**s**'s Co-Owner;

l. Defendant Jumper informed one of Jumpstart Communication**s**'s clients that he intends to freeze the company's bank accounts and take Jumpstart Communication**s**'s Co-Owner out of the business;

m. Defendant Jumper removed more than $100,000 from Jumpstart Communication**s**'s bank accounts;

n. Defendant Jumper texted seven (7) Jumpstart Communication**s**'s employees and falsely alleged that Jumpstart Communication**s**'s Co-Owner had hacked his phone and that the employees should check to see if their phones had been hacked too; and

o. Defendant Jumper submitted fabricated text messages to Jumpstart Communication**s**'s bankers.

13. Meanwhile, Defendant Jumper was also charged with multiple criminal offenses including: Possession of Paraphernalia in Case No. 02D04-2404-CM- 001897; Possession of Methamphetamine, Possession of a Narcotic Drug, and Operating a Vehicle While Intoxicated Endangering a Person in Case No. 48C05-2405-F6-001613; Possession of Cocaine, Operating

a Vehicle with a Schedule I or II Controlled Substance or its Metabolite, and Possession of

Paraphernalia in Case No. 48C06-2406-F4-001720; and Unlawful Possession of Use of a Legend

Drug, Operating a Vehicle While Intoxicated Endangering a Person, Possession of a

Controlled Substance-Possession of a Schedule I, II, III, or IV, Possession of Paraphernalia,

Driving While Suspended, and Unlawful Stopping/Parking/Standing of Vehicle on Traveled

Part of Highway in Case No. 32C01-2406-F6-000594.

*Jumpstart Communications's Co-Owner is Granted Temporary Possession of Jumpstart*
*Communications*

14.    In an effort to protect Jumpstart Communications, Jumpstart Communications's

Co-Owner filed a Verified Emergency Petition for Temporary Possession and Daily Operations of

the Jumpstart Communications, LLC on July 2, 2024.[1] A true and accurate copy of that Petition is

attached hereto as Exhibit 1.

15.    On July 16, 2024, the Court entered an Order granting Jumpstart Communications's

Co-Owner "temporary possession of Jumpstart Communications to continue to run all of the daily

operations with the existing staff." (Ex. 2, ¶ 10). A true and accurate copy of the Order is attached

hereto as Exhibit 2.

16.    The Order further provided that Defendant Jumper shall:

> 11.    [R]efrain from contacting [Jumpstart Communications's Co-
> Owner], employees, potential clients, current clients, and sub-contractors of
> Jumpstart Communications, LLC with the exception that he may receive calls
> from employees that he considers a friend to discuss any other subject other
> than Jumpstart Communications, LLC and from sub-contractors that contact
> him for work wherein he shall refer he/she to the Respondent.

---

[1] By this time, Defendant Jumper had petitioned for divorce from Jumpstart Communications's co-
founder, Erin O'Donnell. Although he subsequently withdrew his petition, Ms. O'Donnell filed a
counter-petition for divorce, which is currently pending in the Allen Circuit Court bearing cause
no. 02C01-2405-DC-000611.

12.    [Defendant Jumper] shall refrain from accessing, restricting, or closing any/all bank accounts in the name of Jumpstart Communication**s**, LLC including but not limited to 3 Rivers Federal Credit Union.

13.    [Defendant Jumper] shall refrain from accessing, modifying, restricting, or closing any/all credit cards in the name of Jumpstart Communication**s**, LLC.

14.    [Defendant Jumper] shall refrain from entering upon any property owned or leased by Jumpstart Communication**s**, LLC.

15.    [Defendant Jumper]  shall refrain from accessing, modifying, restricting, or closing any/all internet accounts, QuickBooks, security cameras, and cell phone accounts used by Jumpstart Communication**s**, LLC.[2]

(Ex. 2, ¶¶ 11-15).

*Meanwhile, Defendant Jumper, while still a member of Jumpstart Communication**s**, starts a competing business—"Jumpstart Communicatio**n**, LLC"—and, together, they continue their efforts to destroy Jumpstart Communication**s***

17.    While still a member of Jumpstart Communication**s**, Defendant Jumper began a competing telecommunications construction company with a virtually identical name: Jumpstart Communicatio**n**.

18.    According to Indiana's Secretary of State's website, the principal address for Jumpstart Communicatio**n** is 6317 Maplecrest Rd, Fort Wayne, Indiana, 46835—one Jumpstart Communication**s**'s business addresses.

19.    Jumpstart Communicatio**n** also operates in the same geographical areas as Jumpstart Communication**s**, including in Indiana and Michigan.

---

[2] Despite Defendant Jumper *agreeing* to the Order—and the Order still being in effect—Defendant Jumper is believed to have violated the Order more than 65 times, conduct which is the subject of multiple petitions for contempt set to be heard later this month. True and accurate copies of those petitions are attached hereto as Exhibit 3.

20.     Defendant Jumper and/or Jumpstart Communicatio**n** created virtually identical electronic mailing addresses as those used by Jumpstart Communication**s**, which they use to conduct Jumpstart Communicatio**n**'s day-to-day business:

| Jumpstart Communications's E-mail Addresses | Jumpstart Communication's E-mail Addresses |
|---|---|
| jumpstarttelecom@gmail.com | jumpstarttelecom@yahoo.com |
| ryan@jumpstartcommunications.net | ryan@jumpstartcommunication.net |

21.     Defendant Jumper and/or Jumpstart Communicatio**n** have repeatedly attempted to divert business from Jumpstart Communication**s** to Jumpstart Communicatio**n.** For example, Defendant Jumper sent a text message to twelve (12) of Jumpstart Communication**s**'s customers telling them that they needed to be copying him at jumpstarttelecom@yahoo.com.

22.     Defendant Jumper and/or Jumpstart Communicatio**n** also use Jumpstart Communication**s**' logo in the signature block of Defendant Jumper's ryan@jumpstartcommunication.net email address.

23.     Defendant Jumper and/or Jumpstart Communicatio**n** are believed to be doing telecommunications construction work for at least one (1) of Jumpstart Communication**s**'s existing customers.

24.     Defendant Jumper and/or Jumpstart Communicatio**n** have attempted to obtain additional work from Jumpstart Communication**s**'s existing customers including, but not limited, to one of Jumpstart Communication**s**'s largest customers ("Customer A"), with whom Jumpstart Communication**s** has a multi-million dollar contract. More specifically, Defendant Jumper and/or Jumpstart Communicatio**n** informed a Manager of Customer A that Defendant Jumper had a new

company and that his new company was going to onboard with Customer A. Customer A then informed Jumpstart Communications of Defendant Jumper's and/or Jumpstart Communication's statements.

25.    Defendant Jumper and/or Jumpstart Communication told another Jumpstart Communications's customer ("Customer B") with whom Jumpstart Communications's has a strong business relationship with that "management is running Jumpstart Communications into the ground and it won't be around much longer" and that Defendant Jumper had started a new company, and the new company would like to onboard with Customer B.

26.    Defendant Jumper and/or Jumpstart Communication are also recruiting Jumpstart Communications's employees and, to date, two (2) employees have left Jumpstart Communications to join Jumpstart Communication.

27.    Defendant Jumper and/or Defendant Jumpstart Communication are also, at times, operating their business by acting as Jumpstart Communications and/or still purporting to do business on behalf of Jumpstart Communications. For example, Jumpstart Communications received a contract via DocuSign for Jumpstart Communications to be a subcontractor for Ervin Cable Construction. The contract identified Defendant Jumper as the signatory. Jumpstart Communications had no knowledge of this subcontractor agreement.

28.    Defendant Jumper and/or Defendant Jumpstart Communication are also intentionally, recklessly, and/or negligently misleading Jumpstart Communication's customers or prospective customers—including Jumpstart Communications's existing customers—into believing that Defendant Jumper is involved in the daily operations of Jumpstart Communications and that Jumpstart Communication is affiliated with Jumpstart Communications.

29.     For example, Defendant Jumper and/or Defendant Jumpstart Communication purchased commercial vehicles from a key telecommunications construction supplier. After delivering the commercial vehicles to Defendant Jumper and/or Defendant Jumpstart Communication, the supplier realized that Defendant Jumper and/or Jumpstart Communication were not affiliated with Jumpstart Communications and pulled the delivery. The supplier later informed Jumpstart Communications that it felt it had been a victim of fraud.

30.     Defendant Jumper and/or Jumpstart Communication have also diverted more than $150,000 in checks made payable to Jumpstart Communications to the campground where Defendant Jumper was living. These actions were done with the specific intent to defraud Jumpstart Communications and further Defendants' scheme to divert Jumpstart Communications's assets and/or corporate opportunities for their own benefit and, ultimately, "burn this motherfucker to the ground." More specifically, in or around August 2024, Defendant Jumper and/or Jumpstart Communication—without authority or authorization to do so—electronically submitted a change of address form to the United States Postal Service requesting Jumpstart Communications's mailing address be changed to 2573 W 100 N Greenfield, Indiana 46140—the campground where Defendant Jumper was living. As a result, $166,857 in customer checks made payable to Jumpstart Communications were delivered to Defendant Jumper and/or Jumpstart Communication. When Jumpstart Communications realized what Defendant Jumper and/or Jumpstart Communication had done, it notified its customers to stop payment on said checks, which they did.

31.     Sometime between July 16, 2024, and September 30, 2024, Defendant Jumper and/or Jumpstart Communication—without authority or authorization to do so—also fraudulently submitted to the Internal Revenue Service ("IRS") via mail a form 8822-B "Change of Address of Responsible Party – Business" changing Jumpstart Communications's address to 2573 W 100 N

Greenfield, Indiana 46140, the address of the campground where Defendant Jumper was living. These actions were done with the specific intent to defraud Jumpstart Communication**s** and further Defendants' scheme to divert Jumpstart Communication**s**'s assets and/or corporate opportunities for their own benefit and, ultimately, "burn this motherfucker to the ground." Jumpstart Communication**s** only learned of Defendant Jumper and/or Jumpstart Communicatio**n**'s conduct on or around September 30, 2024, when Jumpstart Communication**s** received notification from the IRS.

32.    Additionally, sometime between July 16, 2024, and September 19, 2024, Defendants Jumper and/or Jumpstart Communicatio**n** fraudulently applied for a $150,000 business loan with Funding Futures in Jumpstart Communication**s**'s name. When Jumpstart Communication**s** learned of Defendant Ryan Jumper and/or Jumpstart Communicatio**n**'s conduct, it immediately informed Funding Futures that Defendant Jumper had no authority to act on behalf of Jumpstart Communication**s**.

33.    Jumpstart Communication**s** also learned that Defendants Jumper and/or Jumpstart Communication improperly informed a supplier that a drill which Jumpstart Communication**s** was leasing for $11,000/month could be delivered to Defendants Jumper and/or Jumpstart Communicatio**n** at the campground where Defendant Jumper was living.

34.    Since July 16, 2024, Defendant Jumper has also improperly accessed and used Jumpstart Communication**s**'s business accounts to pay more than $12,000 in personal expenses, including at Nike.com.

**COUNT ONE**
**(Trademark Infringement – Defendants Ryan V. Jumper and Jumpstart**
**Communication, LLC)**

35.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

36.     Jumpstart Communications has been operating under the name "Jumpstart Communications" since as early as 2020 in connection with telecommunication construction services. Since that time, Jumpstart Communications has experienced substantial year-after-year growth.

37.     As a result of advertising, promotion, and use of the Jumpstart Communications mark and Logo in connection with telecommunications construction, and through favorable industry and trade acceptance and recognition, the consuming public and trade recognize and identify the "Jumpstart Communications" mark (the "Mark"), and the Logo, with Jumpstart Communications.

38.     Accordingly, Jumpstart Communications's Mark and Logo are assets of incalcuable value as an identifier of Jumpstart Communications, its high quality services, and its goodwill.

39.     Jumpstart Communications has acquired trademark rights in the work mark "Jumpstart Communications" (the "Mark") along with Jumpstart Communications's Logo.

40.     Defendants unauthorized use of "JUMPSTART COMMUNICATION" and the Logo is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' services. The consuming public of the trade is likely to believe that Defendants' services originate with Plaintiff; are licensed, sponsored, or approved by Plaintiff; or in some way are connected with or related to Plaintiff.

41.     Defendants unauthorized and infringing use of "JUMPSTART COMMUNICATION" and the Logo, as alleged herein, constitutes intentional and willful infringement of Plaintiff's rights in and to the Mark.

42.    Such infringing acts have occurred in interstate commerce and have caused, and unless restrained by this court, will continue to cause, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

43.    Defendants have engaged in trademark infringement under the Declaratory Judgment Act, 28 U.S.C. § 2201, along with associated claims under Indiana law.

## COUNT TWO
### (False Designation of Origin – Defendants Ryan V. Jumper and Jumpstart Communication, LLC)

44.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

45.    Defendants    unauthorized    use    in    commerce    of    "JUMPSTART COMMUNICATION" and the Logo, as described herein, is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants, with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services or Defendants' commercial activities by Plaintiff in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

46.    Defendants unauthorized use of "JUMPSTART COMMUNICATION" and the Logo in Defendants' commercial communications, advertising or promotion, as described herein, misrepresents the nature, characteristics, qualities, and origin of Defendants' services, and attempts to pass off Plaintiff's nature, characteristics, qualities, and origin of services as Defendants' own, in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

47.    Defendants' unauthorized and infringing acts, as alleged herein, constitute intentional and willful infringement in violation of Plaintiff's rights, and constitute use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Defendants or its services with Plaintiff's and the services provided under the Mark and the Logo.

48.     Any failure, neglect, or default by Defendants in providing excellent customer service or quality of work performed will reflect adversely on Plaintiff as the believed source of origin of the service.

49.     This hampers Plaintiff's efforts to continue to protect its outstanding reputation for high quality performance, at a reasonable price, and with excellent customer service.

50.     That adverse reflection has resulted, or will result, in the loss of sales by Plaintiff and has or will negate the considerable expenditures by Plaintiff to promote its services under the Mark and the Logo – all to the detriment of Plaintiff.

51.     As a direct result of Defendants' infringement, Plaintiff suffered damages.

52.     Defendants' false designation of origin will continue unless enjoined by this Court.

## COUNT THREE
**(Trademark Dilution – Defendants Ryan V. Jumper and Jumpstart Communication, LLC)**

53.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

54.     Plaintiff hereby alleges trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125.

55.     Defendants' use and advertisement of its products under "JUMPSTART COMMUNICATION" and the Logo have or are likely to injure Plaintiff's business reputation and have or are likely to dilute the distinctive quality of Plaintiff's name, reputation, and customer service, in violation of both Indiana law and federal statutes.

56.     Plaintiff has been, and will continue to be, irreparably harmed, damaged, and injured as a result of Defendants' infringements and threatened infringements of Plaintiff's trademark rights.

57.     Defendants have unlawfully and wrongfully derived, and will continue to derive, income and profits from their infringing acts.

58.    As a direct result of Defendants' infringement, Plaintiff suffered damages.

## COUNT FOUR
**(Unfair Competition – Defendants Ryan V. Jumper and Jumpstart Communication, LLC)**

59.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

60.    Plaintiff hereby alleges unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, along with associated claims under Indiana law.

61.    Defendants, by their unauthorized appropriation and use of the Mark and the Logo, have engaged and are continuing to engage in acts of wrongful deception of the purchasing public, wrongful designation as to the source and sponsorship of services, wrongful deprivation of Plaintiff's good name and reputation, and the wrongful deprivation of Plaintiff's right to public recognition and credit as owner of the Mark and the Logo.

62.    Defendants are operating under the name "JUMPSTART COMMUNICATIO**N**" and using the Logo within their business operations, resulting in consumer confusion as to the source of the services. Such conduct constitutes an unfair trade practice and unfair competition under the Lanham Act and under Indiana law.

63.    Defendants are maliciously and willfully operating under the name "JUMPSTART COMMUNICATIO**N**" and using the Logo with the intent to confuse or deceive the public and Plaintiff's customers.

64.    Defendants have been unjustly enriched as a result of their actions.

65.    As a direct result of Defendants' unfair competition and unfair trade practices against Plaintiff, Plaintiff suffered damages.

## COUNT FIVE
**(Racketeering Influenced Corrupt Organization Violations – Defendants Ryan V. Jumper and Jumpstart Communication, LLC)**

66.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

67.    The racketeering enterprise includes Defendants Ryan Jumper and Jumpstart Communication (collectively "Enterprise" or "RICO Defendants"), and the association-in-fact of its various members and employees.

68.    The RICO Defendants, through the Enterprise, engaged in a pattern of racketeering activity, as defined under 18 U.S.C. § 1961(1) and (5), including at least two predicate acts which are indictable under 18 U.S.C. § 1343 (wire fraud) and/or 18 U.S.C. § 1341 (mail fraud) and one of which occurred after the effective date of Chapter 96 and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

69.    With respect to wire fraud, the RICO Defendants, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

70.    With respect to mail fraud, the RICO Defendants, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or

attempting so to do, placed in any post office or authorized depository for mail matter, a matter or thing to be sent or delivered by the Postal Service, or deposited or caused to be deposited a matter or thing to be sent or delivered by any private or commercial interstate carrier, or took or received therefrom, any such matter or thing, or knowingly caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

71. The RICO Defendants operated, conducted, and participated in the operation of the Enterprise.

72. The predicate acts of racketeering activity described above are all related in that the individual RICO Defendants, acting through the Enterprise, have conducted these criminal acts of fraud to obtain monies and profits for the Enterprise which it would not have acquired by lawful means.

73. The predicate acts are continuous and will continue in the future.

74. The RICO Defendants comprising the Enterprise employ the predicate acts of racketeering activity as a regular method of conducting business, using fraud whenever the opportunity presents itself on whomever it encounters.

75. The RICO Defendants have a history of using the proceeds of current operations and existing assets to finance the expansion of the Enterprise.

76. Each RICO Defendant was a necessary and integral part of the scheme to defraud Plaintiff and each played a role in the operation and control of the scheme defrauding the same.

77. As a direct and proximate cause of the RICO Defendants' actions, Plaintiff has sustained injuries to its business and/or property including, but not limited to, injury to Plaintiff's business reputation and customer good will, loss of revenues, and increased operating expenses.

## COUNT SIX
### (Breach of Fiduciary Duties – Defendant Ryan V. Jumper)

78.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

79.     In his capacity as a member of Jumpstart Communications, and also as an officer and employee of Jumpstart Communications, Defendant Jumper owed fiduciary duties to Jumpstart Communications.

80.     Such fiduciary duties included, but are not limited to, duties of care, loyalty, honestly, and fidelity to Jumpstart Communications, and a duty to refrain from usurping the corporate opportunities of Jumpstart Communications.

81.     Defendant Jumper has breached his fiduciary duties to Jumpstart Communications.

82.     Defendant Jumper's conduct was willful, wanton, reckless, and/or undertaken with a callous disregard for the best interests of Jumpstart Communications.

83.     As a direct and proximate result of Defendant Jumper's actions, Plaintiff suffered damages.

## COUNT SEVEN
### (Tortious Interference with Contract – Ryan V. Jumper and Jumpstart Communication, LLC)

84.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

85.     Plaintiff has valid and enforceable contracts with its customers.

86.     Defendants had knowledge of Plaintiff's contracts.

87.     Defendants induced Plaintiff's customers to breach those contracts.

88.     Defendants' actions were without privilege or justification.

89.     Defendants acted purposely and with malice with the intent to injure Plaintiff.

90.     As a direct and proximate result of Defendants, Plaintiff suffered damages.

## COUNT EIGHT
**(Tortious Interference with Business Relationship – Defendants Ryan V. Jumper and Jumpstart Communication, LLC)**

91.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

92.     There existed a valid business relationship between Plaintiff and its current and prospective customers.

93.     Defendants knew of the existence of the business relationship between Plaintiff and its current and prospective customers.

94.     By their actions and inactions described above, Defendants intentionally interfered with Plaintiff's relationships.

95.     Defendants' actions were without privilege or justification.

96.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages.

## COUNT NINE
**(Civil Theft – Defendant Ryan V. Jumper)**

97.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

98.     Defendant Jumper's actions constitute theft as defined in Indiana Code § 35-43-4-2(a).

99.     Defendant Jumper knowingly or intentionally exerted unauthorized control of proceeds/monies/funds owned wholly and exclusively by Plaintiff with the intent to deprive Plaintiff of its value or use.

100.    As a direct and proximate result of Defendant Jumper's actions, Plaintiff suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter judgment in its favor as follows:

a. Plaintiff is entitled to, among other relief, an order declaring that Defendants' actions infringe Plaintiff's trademark rights; an injunction and an award of actual damages; Defendants' profits; enhanced damages; reasonable attorneys' fees and the costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117; together with prejudgment and post-judgment interest.

b. Plaintiff is entitled to, among other relief, a judgmnet in its favor for monetray damages in an amount which will compensate Plaintiff for its damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees, and for all other just and proper relief in the premises.

Respectfully submitted,

**CARSON LLP**

By:  */s/ Carrie E. Sheridan*
      J. Blake Hike #28601-02
      Carrie E. Sheridan #38703-02
      Brendan C. Ruff #39003-41
      Stephanie Fleming #344021 (California)
      301 W. Jefferson Blvd., Ste. 200
      Fort Wayne, IN 46802
      Telephone: (260) 423-9411
      Email: hike@carsonllp.com
             sheridan@carsonllp.com
             ruff@carsonllp.com
             fleming@carsonllp.com

*Attorneys for Plaintiff Jumpstart Communications, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 22, 2024, a true and accurate copy of the foregoing document was electronically filed with the Court via the Court's CM/ECF filing system, and served on the following parties via private process server:

Jumpstart Commuication, LLC           Ryan Jump
c/o Ryan Jump, Statutory Agent       4830 Halsey Court
4830 Halsey Court                   Fort Wayne, Indiana 46818
Fort Wayne, Indiana 46818

                                  */s/ Carrie E. Sheridan*