UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUMPSTART COMMUNICATIONS LLC, )<br>)<br>Plaintiff, )<br>) | Case No. 1:24-cv-00447 |
| v. )<br>)<br>RYAN JUMPER and )<br>JUMPSTART COMMUNICATION LLC, )<br>)<br>Defendants. ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

### I. INTRODUCTION

Plaintiff, Jumpstart Communications, LLC ("Jumpstart") is a telecommunications construction company owned by Defendant Ryan Jumper ("Jumper") and his wife, Erin O'Donnell ("O'Donnell"). Jumper and O'Donnell are in the midst of a divorce pending in the Allen Circuit Court, and pursuant to the order of that Court, O'Donnell has "possession" of Jumpstart and is running its day-to-day operations. The complaint alleges that Jumper is operating a competing telecommunications business. One of the counts asserted against both Jumper and the corporate defendant is brought under the RICO statute, 18 U.S.C. 1961 *et. seq*. The RICO claim is insufficiently pled and should be dismissed.

### II. FACTUAL ALLEGATIONS RELEVANT TO THE RICO CLAIM

Jumpstart alleges that Jumper, corporate defendant Jumpstart Communication,

LLC, n/k/a The Jumper Group, LLC[1], and other unnamed employees of the corporate defendant comprise a RICO enterprise. Complaint, ¶ 67. Jumpstart alleges that the defendants engaged in the predicate acts of mail fraud and wire fraud. Complaint, ¶ 68.

With respect to wire fraud, ¶ 30 of the Complaint states:

> 30. Defendant Jumper and/or Jumpstart Communication, have also diverted more than $150,000 in checks made payable to Jumpstart Communications to the campground where defendant Jumper was living. These actions were done with the specific intent to defraud Jumpstart Communications and further defendants' scheme to divert Jumpstart Communications's assets and/or corporate opportunities for their own benefit and, ultimately, "burn this motherfucker to the ground." More specifically, in or around August 2024, defendant Jumper and/or Jumpstart Communication-without authority or authorization to do so-electronically submitted a change of address form to the United States Postal Service requesting Jumpstart Communications's mailing address be changed to 2573 W 100 N Greenfield, Indiana 46140-the campground where defendant Jumper was living. As a result, $166,857 in customer checks made payable to Jumpstart Communications were delivered to defendant Jumper and/or Jumpstart Communication. When Jumpstart Communications realized what defendant Jumper and/or Jumpstart Communication had done, it notified its customers to stop payment on said checks, which they did.

With Respect to mail fraud, ¶ 31 of the Complaint states:

> 31. Sometime between July 16, 2024, and September 30, 2024, defendant Jumper and/or Jumpstart Communication-without authority or authorization to do so-also fraudulently submitted to the Internal Revenue Service ("IRS") via mail a form 8822-B "Change of Address of Responsible Party - Business" changing Jumpstart Communications's address to 2573 W 100 N Greenfield, Indiana 46140, the address of the campground where defendant Jumper was living. These actions were done with the specific intent to defraud Jumpstart Communications and further defendants' scheme to divert Jumpstart Communications's assets and/or corporate opportunities for their own benefit and, ultimately, "burn this motherfucker to the ground." Jumpstart Communications only learned of defendant Jumper and/or Jumpstart Communication's conduct on or around September 30, 2024, when Jumpstart Communications received

---

[1] The Complaint accurately reflects that the legal name of the corporate defendant at the time the Complaint was filed was Jumpstart Communication, LLC. On or about November 18, 2024, Jumper filed Amended and Restated Articles with the office of the Indiana Secretary of State which changed the name of the company to The Jumper Group, LLC.

notification from the IRS.

Additional aspects of the Complaint will be discussed as needed in the Argument section below.

### III. ARGUMENT

A. **Pleading standards.**

   1. **12(b)(6) Standard**

      Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving, ... the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)). When a party moves to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and read in the light most favorable to the nonmovant. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000).

*Peters Broadcast Engineering, Inc., v PEM Consulting Group, LLC,* 2023 WL 3079928 at *2 (N.D. Ind.)

   2. **9(b) Standard**

      Rule 9(b) requires a party alleging fraud to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Thus, pursuant to Rule 9(b), a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.' " *United States ex rel. Presser v. Acacia Mental Health*

3

*Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

*Joe Schroeder Legacy, LLC v. Service 247 of Illinois, Inc.,* 2022 404272 at *3 (N.D. Ill.)

### B. Plaintiff fails to State a RICO Claim.

"Enacted in response to long-term criminal activity, including, of course, acts of organized crime, RICO provides a civil cause of action for private plaintiffs and authorizes substantial remedies, including the availability of treble damages and attorneys' fees. See 18 U.S.C. § 1964(c)." *Menzies v. Seyfarth Shaw, LLP*, 943 F.3d 328, 336 (7th Cir. 2019). Generally, a RICO claimant must establish "(a) person who (b) has engaged in a pattern of racketeering activity (c) involving an enterprise engaged in, or the activities which affect, interstate or foreign commerce, and (d) injury to the plaintiff." *Johnson v. Oystacher,* 2018 WL 5249229 at *4 (N.D. Ill). A plaintiff must plead the elements of a RICO claim in order to state a claim. *Menzies* at 336.

### 1. The Complaint fails to identify the particular RICO section that is alleged to have been violated.

The Complaint contains an allegation that the defendants "engaged in a pattern of racketeering activity," Complaint, ¶67, but there is no reference to the particular portion of 18 U.S.C §1962 the defendants are alleged to have violated.

> 18 U.S.C. § 1962(a) makes it unlawful to invest income derived from a pattern of racketeering in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. And Section 1962(c) makes it unlawful to conduct or participate in an enterprise's affairs through a pattern of racketeering activity.

*Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989). Importantly, "the different RICO sections require plaintiffs to prove different things." *Id.*

Accordingly, "it is essential to plead precisely in a RICO case …the RICO section allegedly violated." *Id*. The failure to specify the particular subsection of §1962 at issue in a RICO case "alone may constitute grounds to dismiss a RICO complaint because it fails to inform defendants of the unlawful conduct in which they allegedly engaged." *Atlantic Gypsum Co., Inc. v. Lloyds Intern. Corp.*, 753 F.Supp. 505, 511, n.4 (S.D. N.Y. 1990)(*citing Reynolds*). The failure of the Complaint to specify the portion or portions of §1962 that are alleged to have been violated is the first of many reasons why the RICO claim should be dismissed.

### 2. The Complaint does not satisfy the pleading requirements of Rule 9(b).

"A pattern of racketeering activity requires the completion of at least two predicate acts." *Joe Schroeder Legacy, LLC* at *3. When the predicate acts are mail and/or wire fraud, the heightened pleading requirement of Rule 9(b) must be satisfied. *Peters Broadcast Engineering, Inc.* at *8. Under Rule 9(b),

> a plaintiff must provide precision and some measure of substantiation to each fraud allegation, meaning a plaintiff must plead the who, what, when, where, and how of the alleged fraud. In other words, in order to satisfy this standard, a plaintiff must allege the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation perpetrating the fraud was communicated to the plaintiff.

*Peters Broadcast Engineering, Inc,* at *8 (internal quotations and citations omitted). A "complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Joe Schroeder Legacy, LLC* at *3.

The Complaint in this case fails to satisfy the requirements of Rule 9(b) for a variety of reasons. First, the Complaint makes no attempt to distinguish between the

alleged conduct of Ryan Jumper and the conduct of the corporate defendant. Instead, the Complaint either alleges conduct by "Jumper and/or Jumpstart Communication," see for example ¶¶ 30 and 31 of the Complaint, or makes allegations about the alleged conduct of the "RICO Defendants," see for example ¶¶68-71. By failing to make any distinction between Jumper and the corporate defendant, the Complaint fails to notify each defendant of "their purported role in the scheme." *Vicom, Inc. v. Harbridge Merchant Services, Inc.* 20 F.3d 771, 778 (7th Cir. 1994).

The allegations of fraud are deficient in a variety of other ways as well. The fraud alleged in the complaint takes the form of the submission of two change of address forms, one delivered to the Postal Service electronically and the other to the IRS by mail. See ¶¶ 30 and 31 of the Complaint. In addition to failing to specify the identity of which defendant submitted the forms, the complaint does not explicitly state the misrepresentations that are alleged to have been made. Similarly, there is no reference to where the fraudulent submissions originated or were received. As to "when," the submission to the post office is alleged to have been made sometime in August of 2024, and the submission to the IRS was in an approximate 10-week period between July 16 and September 30, 2024. For all of these reasons, the allegation of mail and wire fraud are insufficient to support a RICO claim.

### 3. The Complaint does not allege a pattern of racketeering activity.

Simply pointing to two predicate acts does not establish a pattern of racketeering activity. Rather,

> a civil RICO claim "must also satisfy the so-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022

6

>(7th Cir. 1992) (alteration in original) (citations omitted); *Menzies*, 943 F.3d at 337 ("To plead a pattern of racketeering activity, a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity—a standard known as the 'continuity plus relationship' test." (citation and internal quotation marks omitted)). "Satisfying the pattern element is no easy feat and its precise requirements have bedeviled courts." *Menzies*, 943 F.3d at 336 (citations omitted).

*Peters Broadcast Engineering, Inc.,* at *6.

When evaluating the continuity prong of a RICO complaint, the Seventh Circuit considers the following factors: "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Id.* at *7. "[C]ourts have repeatedly held that the first factor, the number and variety of predicate acts and the length of time over which they were committed, is weighed the most heavily." *Id* at *8 (internal quotation omitted).

In the present case, the plaintiff has alleged one act of mail fraud and one act of wire fraud, both of which are alleged to have occurred between the middle of July 2024 and the end of September 2024. This two and a half month time span is too short to establish a pattern. *Id.* at *7 ("The predicate acts lasted two months, and two months is insufficient to establish a pattern.")

The second factor also cuts against the plaintiff, as the Complaint alleges the existence of no victim other than the plaintiff.

Regarding the third factor, the Complaint fails to identify multiple schemes; instead alleging that the predicate acts were intended to "further defendants' scheme to divert [Plaintiff's] assets and/or corporate opportunities for their own benefit and, ultimately, 'burn this m[*****f***]er to the ground.'" Complaint, ¶¶ 30 and 31. As such,

7

this factor also weighs against the plaintiff.

The final factor, the occurrence of distinct injuries, also weighs against the plaintiff. Indeed, the plaintiff claims that the defendant attempted to divert customer checks by submitting a change of address form to the Post Office, but the plaintiff also indicates that its customers stopped payment on the diverted checks, foiling the defendants' alleged attempted misappropriation. There is no indication as to how Jumpstart was harmed by the alleged attempt to change its address with the IRS. In other words, it is not clear that the complaint alleges any injury, let alone distinct injuries.

In short, the plaintiff alleges that it was the sole victim of a single scheme which featured a total of two predicate acts that took place over a period of less than three months. As was the case in *Peters Broadcast Engineering, Inc.,* "the complaint does not show that Defendants present a threat of continued criminal activity. As such, the RICO allegations do not adequately plead a pattern." *Peters Broadcast Engineering, Inc.,* at *9 (internal quotations and citations omitted).

### 4. The Complaint does not identify a RICO enterprise.

Finally, the Complaint is insufficient because it does not identify a RICO enterprise. 18 U.S.C. §1962(c) makes it unlawful for a person to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. An enterprise can be a legal entity. See 18 U.S.C. § 1961(4). An enterprise can also be made up of an informal association, or association-in-fact, of a collection of individuals and/or entities. A complaint "must identify people or entities that are distinct from the RICO enterprise itself." *Joe Schroeder Legacy, LLC* at *7. There "must be a distinction between the defendants and the enterprise" and the defendants "must have conducted or participated

8

in the conduct of the *enterprise's* affairs, not just their own affairs." *Id.* (emphasis in original, internal quotation omitted). "The key inquiry in determining if an association-in-fact enterprise exists is whether the defendants share structural features like a common purpose, relationship, and longevity to permit them to pursue the enterprise's purpose." *Peters Broadcasting Engineering, Inc.*, at *4 (internal quotation omitted).

The plaintiff in this case does not allege that the corporate defendant is the enterprise. Rather, the complaint seems to allege an association-in-fact theory. See ¶67 of the Complaint (alleging that the enterprise includes "Jumper and [the corporate defendant][2], and the association-in-fact of its members and employees.") Of course, the complaint also alleges that the defendants, Jumper and the corporate defendant, "operated, conducted, and participated in the operation of the Enterprise." Complaint, ¶ 71. However, an association-in-fact enterprise cannot be composed of "a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Ray v. Spirit Airlines,* 836 F.3d 1340, 1357 (11 Cir. 2016); *Ratfield v. United States Drug Testing Laboratories, Inc.*, 2024 WL 640955 (N.D. Ill.). "Because every corporation acts through its own employees as a matter of course, allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation." *Ray* at 1357.

The enterprise allegations of the Complaint are also deficient even if a corporate defendant can be part of an association-in-fact enterprise and a person liable because of its role in the enterprise. The Complaint "does not describe the organizational structure or hierarchy of the alleged enterprise, which courts have found to be fatal to civil RICO

---

[2] Jumper is alleged to be the founder and president of the corporate defendant. Complaint ¶¶ 3 and 17.

claims." *Joe Schroeder Legacy, LLC* at *9. *See also Peters Broadcast Engineering, Inc.* at *6 (enterprise allegation is insufficient when the complaint does not describe "what role each Defendant plays in the enterprise" or how the defendants "operate within the enterprise.")

### IV. CONCLUSION

The Plaintiff's RICO claim is deficient in almost every regard. The allegations concerning the predicate acts of mail and wire fraud do not meet the specificity requirements of Rule 9(b). The allegations of a single scheme directed at a single victim based on two predicate acts that span a two and one-half month period do not support the continuity element of a pattern of racketeering activity. The allegations concerning a RICO enterprise fail to describe the roles that the various participants played in the enterprise, and the complaint impermissibly asserts an association-in-fact enterprise made up of a corporate entity and its employees and officers. For all of these reasons, the RICO allegations fail to state a claim, and Count Five of the Complaint should be dismissed.

Respectfully submitted,

Date:   December 27, 2024

/s/  David E. Bailey
David E. Bailey, #21527-02
Audrey M. Van Gilder, #35664-49
FLETCHER VAN GILDER, LLP
436 E. Wayne Street
Fort Wayne, Indiana   46802
Telephone:  (260) 425-9777
Facsimile:  (260) 424-9177
Email:  bailey@fvglaw.com
Email:  amvangilder@fvglaw.com
*Attorneys for Defendants*
*Ryan Jumper and*
*Jumpstart Communication, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2024, a copy of the foregoing was electronically filed with the clerk of the court using the CM/ECF system and served on all counsel of record.

J. Blake Hike
Carrie E. Sheridan
Brendan C. Ruff
Stephanie Fleming
E: hike@carsonllp.com
E: sheridan@carsonllp.com
E: ruff@carsonllp.com
E: fleming@carsonllp.com

                                                    */s/ David E. Bailey*
                                                    David E. Bailey