**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

JUMPSTART COMMUNICATIONS LLC,   )
                                  )
         Plaintiff,     )
                                  )   Magistrate Judge Susan L. Collins
    vs.                       )
                                  )   Case No. 1:24-cv-00447
RYAN V. JUMPER and            )
THE JUMPER GROUP LLC F/K/A   )
JUMPSTART COMMUNICATION LLC,  )
                                  )
         Defendants.    )

## FIRST AMENDED COMPLAINT

For its First Amended Complaint against Defendants, Ryan V. Jumper ("Defendant Jumper") and The Jumper Group LLC, formerly known as Jumpstart Communicatio**n** LLC ("Jumpstart Communicatio**n**") (collectively "Defendants"), Plaintiff, Jumpstart Communication**s** LLC ("Jumpstart Communication**s**"), alleges as follows:

### INTRODUCTION

Making good on his threat to "burn this motherfucker to the ground," Defendant Jumper—a current member of Jumpstart Communication**s** and its former CEO—has intentionally and willfully began a competing company with a *virtually identical* name and *identical* logo. Committed to ensuring there is nothing left of the company he co-founded with his wife Erin, Defendant Jumper continues to work to destroy Jumpstart Communication**s** by hiring its employees, attempting to onboard its customers, and damaging its relationships with key members of the trade. Defendant Jumper's most recent conduct may be most telling of all—

forming a second competing telecommunications construction company named Efferin Cable Construction LLC (read: "F*&% Erin Cable Construction LLC").

## THE PARTIES

1.    Jumpstart Communication**s** is an Indiana limited liability company formed in July 2020 with its headquarters and principal place of business located in Fort Wayne, Indiana.

2.    Defendant Jumper is a current member of Jumpstart Communication**s** and its former Chief Executive Officer.

3.    Defendant Jumpstart Communicatio**n** is an Indiana limited liability company formed in December 2021 with its principal place of business located in Brownsburg, Indiana. According to publicly available documents filed with the Indiana Secretary of State, Defendant Jumper is the President of Jumpstart Communicatio**n**.

## JURISDICTION AND VENUE

4.    The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because Jumpstart Communication**s** asserts federal claims under the Declaratory Judgment Act (28 U.S.C. § 2201) and the Lanham Act (15 U.S.C. § 1125).

5.    The Court has supplemental jurisdiction over Jumpstart Communication**s'** state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy and derive from a common nucleus of operative facts.

6.    Venue is proper in the Northern District of Indiana under 28 U.S.C. § 1391(b) because Defendants resided in this judicial district at the time Plaintiff's Complaint was filed, and a substantial part of the events or omissions giving rise to claims occurred in this judicial district.

## BACKGROUND

*Jumpstart Communications is founded in 2020 and quickly achieves an annual revenue of more than $10,000,000*

7.    Jumpstart Communications is a telecommunications construction company founded by Defendant Jumper and his wife, Erin O'Donnell ("Jumpstart Communications' Co-Owner"), who are Jumpstart Communications' only members.

8.    Jumpstart Communications presently employs between 50-100 individuals and serves customers in Indiana, Ohio, Kentucky, Missouri, and Michigan.

9.    Jumpstart Communications has a website (https://jumpstartcommunications.net/home), a Facebook profile (https://www.facebook.com/jumpstarttelecom), and a LinkedIn page (https://www.linkedin.com/in/jumpstarttelecom)—each of which bear its logo (the "Logo"):



10.    Despite being formed less than five (5) years ago, Jumpstart Communications has experienced tremendous growth, with its 2023 revenue exceeding **$10,000,000**.

11.    From Jumpstart Communications' inception until on or about July 16, 2024, Defendant Jumper served as its Chief Executive Officer.

*In or around April 2024, Defendant Jumper, who previously struggled with drugs, relapses, threatens to "burn this motherfucker [i.e., Jumpstart Communications] to the ground"—and almost does*

12.    Beginning in April 2024, Jumpstart Communication**s** noticed erratic and concerning changes in Defendant Jumper's behavior. Examples of Defendant Jumper's erratic and concerning behavior included:

    a.  Jumpstart Communication**s**' security camera captured Defendant Jumper removing a bag of drugs from a truck. After being confronted by an employee, Defendant Jumper turned off the security cameras and changed the password on the security cameras. On another occasion, an employee found a crack pipe in a work truck previously used by Defendant Jumper;

    b.  Defendant Jumper unilaterally changed the password on the Capital One business account and disconnected the Capital One business account from QuickBooks, when employees of Jumpstart Communication**s** have Capital One business credit cards that need to be timely paid;

    c.  Defendant Jumper locked the business's joint business checking and joint business money market accounts, access to which Jumpstart Communication**s** needs to pay its employees and its bills;

    d.  Defendant Jumper changed the password on the business email account of Jumpstart Communication**s**' co-owner, O'Donnell, and locked her company credit card;

    e.  Defendant Jumper unilaterally changed the door codes at one of Jumpstart Communication**s**' locations;

    f.  Defendant Jumper unilaterally changed the password to the Jumpstart Communication**s**' admin email account;

    g.  Defendant Jumper unilaterally locked Jumpstart Communication**s**' Verizon account and removed Jumpstart Communication**s**' Co-Owner as an authorized user;

h.  Defendant Jumper locked Jumpstart Communication**s**' Co-Owner out of the Capital One business account;

i.  Defendant Jumper unilaterally changed Jumpstart Communication**s**' password to in Biz/Access Indiana, which is necessary for Jumpstart Communication**s** to access to file business entity reports and to pay estimated taxes. Defendant Jumper then removed Jumpstart Communication**s**' Co-Owner as a governing individual on Jumpstart Communication**s**' Secretary of State documents; presented those new documents to Chase Bank on May 23, 2024; and had Jumpstart Communication**s**' Co-Owner removed from Jumpstart Communication**s**' bank account. When Jumpstart Communication**s**' Co-Owner corrected these documents and requested Chase Bank add her back to the account, Chase Bank's legal department froze the account for further investigation;

j.  Jumpstart Communication**s**' business accountant advised Jumpstart Communication**s**' Co-Owner that he had been threatened by Defendant Jumper and would not continue as Jumpstart Communication**s**' accountant if Defendant Jumper's behavior continued;

k.  Defendant Jumper stated he is starting a new company and will "bury" Jumpstart Communication**s**' Co-Owner;

l.  Defendant Jumper informed one of Jumpstart Communication**s**' clients that he intends to freeze the company's bank accounts and take Jumpstart Communication**s**' Co-Owner out of the business;

m.  Defendant Jumper removed more than $100,000 from Jumpstart Communication**s**' bank accounts;

n.  Defendant Jumper texted seven (7) Jumpstart Communication**s**' employees and falsely alleged that Jumpstart Communication**s**' Co-Owner had hacked his phone and that the employees should check to see if their phones had been hacked too; and

o.  Defendant Jumper submitted fabricated text messages to Jumpstart Communication**s**' bankers.

13.  Meanwhile, Defendant Jumper was charged with multiple criminal offenses including: Possession of Paraphernalia in Case No. 02D04-2404-CM- 001897; Possession of

Methamphetamine, Possession of a Narcotic Drug, and Operating a Vehicle While Intoxicated Endangering a Person in Case No. 48C05-2405-F6-001613; Possession of Cocaine, Operating a Vehicle with a Schedule I or II Controlled Substance or its Metabolite, and Possession of Paraphernalia in Case No. 48C06-2406-F4-001720; and Unlawful Possession of Use of a Legend Drug, Operating a Vehicle While Intoxicated Endangering a Person, Possession of a Controlled Substance-Possession of a Schedule I, II, III, or IV, Possession of Paraphernalia, Driving While Suspended, and Unlawful Stopping/Parking/Standing of Vehicle on Traveled Part of Highway in Case No. 32C01-2406-F6-000594.

*Jumpstart Communications' Co-Owner is Granted Temporary Possession of Jumpstart Communications*

14.    In an effort to protect Jumpstart Communications, Jumpstart Communications' Co-Owner filed a Verified Emergency Petition for Temporary Possession and Daily Operations of the Jumpstart Communications, LLC on July 2, 2024.[1] A true and accurate copy of that Petition is attached hereto as Exhibit 1.

15.    On July 16, 2024, the Court entered an Order granting Jumpstart Communications' Co-Owner "temporary possession of Jumpstart Communications to continue to run all of the daily operations with the existing staff." (Ex. 2, ¶ 10). A true and accurate copy of the Order is attached hereto as Exhibit 2.

---

[1] By this time, Defendant Jumper had petitioned for divorce from Jumpstart Communications' co-founder, Erin O'Donnell. Although he subsequently withdrew his petition, Ms. O'Donnell filed a counter-petition for divorce, which is currently pending in the Allen Circuit Court bearing Cause No. 02C01-2405-DC-000611.

16.    The Order further provided, in part, that Defendant Jumper shall:

11.    [R]efrain from contacting [Jumpstart Communications' Co-Owner], employees, potential clients, current clients, and sub-contractors of Jumpstart Communications, LLC with the exception that he may receive calls from employees that he considers a friend to discuss any other subject other than Jumpstart Communications, LLC and from sub-contractors that contact him for work wherein he shall refer he/she to the Respondent.

12.    [Defendant Jumper] shall refrain from accessing, restricting, or closing any/all bank accounts in the name of Jumpstart Communications, LLC including but not limited to 3 Rivers Federal Credit Union.

13.    [Defendant Jumper] shall refrain from accessing, modifying, restricting, or closing any/all credit cards in the name of Jumpstart Communications, LLC.

14.    [Defendant Jumper] shall refrain from entering upon any property owned or leased by Jumpstart Communications, LLC.

15.    [Defendant Jumper]  shall refrain from accessing, modifying, restricting, or closing any/all internet accounts, QuickBooks, security cameras, and cell phone accounts used by Jumpstart Communications, LLC.[2]

(Ex. 2, ¶¶ 11-15).

*Meanwhile, Defendant Jumper, while still a member of Jumpstart Communications, starts a competing business—"Jumpstart Communication, LLC"—and, together, they continue their efforts to destroy Jumpstart Communications*

17.    While still a member of Jumpstart Communications, Defendant Jumper formed a competing telecommunications construction company with a virtually identical name: Jumpstart Communication.

---

[2] Despite Defendant Jumper *agreeing* to the Order—and the Order still being in effect—Defendant Jumper is believed to have violated the Order more than 65 times, conduct which is the subject of multiple petitions for contempt set to be heard later this month. True and accurate copies of those petitions are attached hereto as Exhibit 3.

18.     According to the Indiana Secretary of State's website, until approximately November 7, 2024, the principal address for Jumpstart Communicatio**n** was 6317 Maplecrest Rd, Fort Wayne, Indiana, 46835—one of Jumpstart Communication**s**' business addresses.

19.     Jumpstart Communicatio**n** also operates in the same geographical areas as Jumpstart Communication**s**, including in Indiana and Michigan.

20.     Defendant Jumper and/or Jumpstart Communicatio**n** also created virtually identical electronic mailing addresses as those used by Jumpstart Communication**s**, which they use to conduct Jumpstart Communicatio**n**'s day-to-day business:

| Jumpstart Communications' E-mail Addresses | Jumpstart Communication's E-mail Addresses |
| --- | --- |
| jumpstarttelecom@gmail.com | jumpstarttelecom@yahoo.com |
| ryan@jumpstartcommunications.net | ryan@jumpstartcommunication.net |

21.     Defendant Jumper and/or Jumpstart Communicatio**n** have repeatedly attempted to divert business from Jumpstart Communication**s** to Jumpstart Communicatio**n.** For example, Defendant Jumper sent a text message to twelve (12) of Jumpstart Communication**s**' customers telling them that they needed to be copying him at jumpstarttelecom@yahoo.com.

22.     Defendant Jumper and/or Jumpstart Communicatio**n** also use Jumpstart Communication**s**' logo in the signature block of Defendant Jumper's ryan@jumpstartcommunication.net email address.

23.     Defendant Jumper and/or Jumpstart Communicatio**n** are believed to be doing telecommunications construction work for at least one (1) of Jumpstart Communication**s**' existing customers.

24.     Defendant Jumper and/or Jumpstart Communicatio**n** have attempted to obtain additional work from Jumpstart Communications' existing customers including, but not limited to, one of Jumpstart Communications' largest customers ("Customer A"), with whom Jumpstart Communications has a multi-million dollar contract. More specifically, Defendant Jumper and/or Jumpstart Communicatio**n** informed a Manager of Customer A that Defendant Jumper had a new company and that his new company was going to onboard with Customer A. Customer A then informed Jumpstart Communications of Defendant Jumper's and/or Jumpstart Communicatio**n**'s statements.

25.     Defendant Jumper and/or Jumpstart Communicatio**n** told another Jumpstart Communications' customer ("Customer B") with whom Jumpstart Communications' has a strong business relationship with that "management is running Jumpstart Communications into the ground; that it won't be around much longer;" that Defendant Jumper had started a new company; and that the new company would like to onboard with Customer B.

26.     Defendant Jumper and/or Jumpstart Communicatio**n** are also recruiting Jumpstart Communications' employees and, to date, two (2) employees have left Jumpstart Communications to join Jumpstart Communicatio**n**.

27.     Defendant Jumper and/or Defendant Jumpstart Communicatio**n** are also, at times, operating their business by acting as Jumpstart Communications  and/or still purporting to do business on behalf of Jumpstart Communications. For example, Jumpstart Communications received a contract via DocuSign for Jumpstart Communications to be a subcontractor for Ervin Cable Construction. The contract identified Defendant Jumper as the signatory. Jumpstart Communications had no knowledge of this subcontractor agreement.

28.    Defendant Jumper and/or Defendant Jumpstart Communication are also intentionally, recklessly, and/or negligently misleading Jumpstart Communication's customers or prospective customers—including Jumpstart Communications' existing customers—into believing that Defendant Jumper is involved in the daily operations of Jumpstart Communications and that Jumpstart Communication is affiliated with Jumpstart Communications.

29.    For example, Defendant Jumper and/or Defendant Jumpstart Communication purchased commercial vehicles from a key telecommunications construction supplier. After delivering the commercial vehicles to Defendant Jumper and/or Defendant Jumpstart Communication, the supplier realized that Defendant Jumper and/or Jumpstart Communication were not affiliated with Jumpstart Communications and pulled the delivery. The supplier later informed Jumpstart Communications that it felt it had been a victim of fraud.

30.    Defendant Jumper and/or Jumpstart Communication have also diverted more than $150,000 in checks made payable to Jumpstart Communications to the campground where Defendant Jumper was living. More specifically, in or around August 2024, Defendant Jumper and/or Jumpstart Communication—without authority or authorization to do so—electronically submitted a change of address form to the United States Postal Service requesting Jumpstart Communications' mailing address be changed to 2573 W 100 N Greenfield, Indiana 46140—the campground where Defendant Jumper was living. As a result, $166,857.00 in customer checks made payable to Jumpstart Communications were delivered to Defendant Jumper and/or Jumpstart Communication. When Jumpstart Communications realized what Defendant Jumper and/or Jumpstart Communication had done, it notified its customers to stop payment on said checks, which they did.

31.    Sometime between July 16, 2024, and September 30, 2024, Defendant Jumper and/or Jumpstart Communication—without authority or authorization to do so—also submitted to the Internal Revenue Service ("IRS") via mail a form 8822-B "Change of Address of Responsible Party – Business" changing Jumpstart Communications' address to 2573 W 100 N Greenfield, Indiana 46140—the campground where Defendant Jumper was living. Jumpstart Communications only learned of Defendant Jumper and/or Jumpstart Communication's conduct on or around September 30, 2024, when Jumpstart Communications received notification from the IRS.

32.    Additionally, sometime between July 16, 2024, and September 19, 2024, Defendants Jumper and/or Jumpstart Communication applied for a $150,000 business loan with Funding Futures in Jumpstart Communications' name. When Jumpstart Communications learned of Defendant Ryan Jumper and/or Jumpstart Communication's conduct, it immediately informed Funding Futures that Defendant Jumper had no authority to act on behalf of Jumpstart Communications.

33.    Jumpstart Communications also learned that Defendants Jumper and/or Jumpstart Communication improperly informed a supplier that a drill which Jumpstart Communications was leasing for $11,000/month could be delivered to Defendants Jumper and/or Jumpstart Communication at the campground where Defendant Jumper was living.

34.    Since July 16, 2024, Defendant Jumper has also improperly accessed and used Jumpstart Communications' business accounts to pay more than $12,000 in personal expenses, including at Nike.com.

*Defendant Jumper then starts a <u>second</u> telecommunications construction company, Efferin Cable Construction LLC*

35.     On or around October 15, 2024, an Indiana limited liability company named "Efferin Cable Construction LLC"—read "F&*% Erin Cable Construction LLC—was formed.

36.     Defendant Jumper's prior residential address is identified as Efferin Cable Construction LLC's principal place of business.

37.     Defendant Jumper's mother—a former travel agent with no known experience in the telecommunications construction industry—is identified as the company's CEO and statutory agent.

38.     However, Jumpstart Communication**s** was recently informed by counsel for Defendant Jumper's mother that Defendant Jumper's mother has *<u>no knowledge whatsoever</u>* of "Efferin Cable Construction LLC," much less acts as the company's CEO.

*Following the filing of this Complaint, Jumpstart Communicatio**n** filed Articles of Amendment with the Indiana Secretary of State changing its name to "The Jumper Group LLC"—but "The Jumper Group LLC" is believed to still be operating under the name "Jumpstart Communicatio**n"***

39.     On or about December 4, 2024 (and after the filing of this lawsuit), Jumpstart Communicatio**n** filed Articles of Amendment with the Indiana Secretary of State changing the name of the company to "The Jumper Group LLC."

40.     However, Defendant Jumper and/or "The Jumper Group LLC" are believed to still be operating under the "Jumpstart Communicatio**n**" name.

### COUNT ONE
**(Trademark Infringement – Defendants Ryan V. Jumper and
The Jumper Group LLC f/k/a Jumpstart Communication LLC)**

41.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

42.     Defendants have engaged in trademark infringement under the Declaratory Judgment Act, 28 U.S.C. § 2201, along with associated claims under Indiana law.

43.     Jumpstart Communication**s** has been operating under the name "Jumpstart Communication**s**" since as early as 2020 in connection with telecommunications construction services.  Since that time, Jumpstart Communication**s** has experienced substantial year-after-year growth.

44.     As a result of advertising, promotion, and use of the mark "Jumpstart Communication**s**" (the "Mark") and the Logo in connection with telecommunications construction, and through favorable industry and trade acceptance and recognition, the consuming public and trade recognize and identify the Mark and the Logo with Jumpstart Communication**s**.

45.     The Mark and the Logo are assets of incalculable value as an identifier of Jumpstart Communication**s**, its high quality services, and its goodwill.

46.     Accordingly, Jumpstart Communication**s** has acquired trademark rights in the mark "Jumpstart Communication**s**" and the Logo.

47.     Defendants' unauthorized use of "JUMPSTART COMMUNICATIO**N**" and the Logo are likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' services.  The consuming public of the trade is likely to believe that Defendants' services originate with Plaintiff; are licensed, sponsored, or approved by Plaintiff; or in some way are connected with or related to Plaintiff.

48.     Defendants' unauthorized use of "JUMPSTART COMMUNICATIO**N**" and the Logo constitutes intentional and willful infringement of Plaintiff's rights in and to the Mark and the Logo.

49.     Such infringing acts have occurred in interstate commerce and have caused, and unless restrained by this court, will continue to cause, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## COUNT TWO
### (False Designation of Origin – Defendants Ryan V. Jumper and The Jumper Group LLC f/k/a Jumpstart Communication LLC)

50.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

51.     Plaintiff alleges false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125.

52.     Defendants unauthorized use in commerce of "JUMPSTART COMMUNICATION" and the Logo are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants, with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services or Defendants' commercial activities by Plaintiff in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

53.     Defendants' unauthorized use of "JUMPSTART COMMUNICATION" and the Logo in Defendants' commercial communications, advertising, or promotion misrepresents the nature, characteristics, qualities, and origin of Defendants' services, and attempts to pass off Plaintiff's nature, characteristics, qualities, and origin of services as Defendants' own, in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

54.     Defendants' unauthorized and infringing acts constitute intentional and willful infringement in violation of Plaintiff's rights and constitute use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Defendants or its services with Plaintiff and the services provided under the Mark and the Logo.

55.    Any failure, neglect, or default by Defendants in providing excellent customer service or quality of work performed will reflect adversely on Plaintiff as the believed source of origin of the service.

56.    This hampers Plaintiff's efforts to continue to protect its outstanding reputation for high quality performance, at a reasonable price, and with excellent customer service.

57.    That adverse reflection has resulted, or will result, in the loss of sales by Plaintiff and has or will negate the considerable expenditures by Plaintiff to promote its services under the Mark and the Logo—all to the detriment of Plaintiff.

58.    As a direct result of Defendants' infringement, Plaintiff suffered damages.

59.    Defendants' false designation of origin will continue unless enjoined by this Court.

60.    Plaintiff is entitled to, among other relief, an order declaring that Defendants' actions infringe Plaintiff's trademark rights; an injunction and an award of actual damages; Defendants' profits; enhanced damages; reasonable attorneys' fees and the costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117; together with pre-judgment and post-judgment interest.

**COUNT THREE**
**(Trademark Dilution – Defendants Ryan V. Jumper and**
**The Jumper Group LLC f/k/a Jumpstart Communication LLC)**

61.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

62.    Plaintiff hereby alleges trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125.

63.    Defendants' use and advertisement of its products under "JUMPSTART COMMUNICATIO**N**" and the Logo have, or are likely to, injure Plaintiff's business reputation

and have, or are likely to, dilute the distinctive quality of Plaintiff's name, reputation, and customer service, in violation of both federal law and Indiana law.

64.    Plaintiff has been, and will continue to be, irreparably harmed, damaged, and injured as a result of Defendants' infringements and threatened infringements of Plaintiff's trademark rights.

65.    Defendants have unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from their infringing acts.

66.    As a direct result of Defendants' infringement, Plaintiff suffered damages.

67.    Plaintiff is entitled to, among other relief, an order declaring that Defendants' actions infringe Plaintiff's trademark rights; and an award of actual damages, Defendants' profits, enhanced damages, reasonable attorneys' fees, and the costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

### COUNT FOUR
**(Unfair Competition – Defendants Ryan V. Jumper and
The Jumper Group LLC f/k/a Jumpstart Communication LLC)**

68.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

69.    Plaintiff alleges unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, along with associated claims under Indiana law.

70.    Defendants, by their unauthorized appropriation and use of the Mark and the Logo, have engaged, and are continuing to engage, in acts of wrongful deception of the purchasing public, wrongful designation as to the source and sponsorship of services, wrongful deprivation of Plaintiff's good name and reputation, and the wrongful deprivation of Plaintiff's right to public recognition and credit as owner of the Mark and the Logo.

71.    Defendants are operating under the name "JUMPSTART COMMUNICATIO**N**" and using the Logo within their business operations, resulting in consumer confusion as to the source of the services. Such conduct constitutes an unfair trade practice and unfair competition under the Lanham Act and Indiana law.

72.    Defendants are maliciously and willfully operating under the name "JUMPSTART COMMUNICATIO**N**" and using the Logo with the intent to confuse or deceive the public and Plaintiff's customers.

73.    Defendants have been unjustly enriched as a result of their actions.

74.    As a direct result of Defendants' unfair competition and unfair trade practices against Plaintiff, Plaintiff suffered damages.

75.    Plaintiff is entitled to, among other relief, an injunction and an award of actual damages; Defendant's profits; enhanced damages; reasonable attorneys' fees and the costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117; together with pre-judgment and post-judgment interest.

## COUNT FIVE
### (Breach of Fiduciary Duties – Defendant Ryan V. Jumper)

76.    Plaintiff incorporates by reference all prior allegations as if fully restated herein.

77.    In his capacity as a member of Jumpstart Communication**s**, and also as an officer and employee of Jumpstart Communication**s**, Defendant Jumper owed fiduciary duties to Jumpstart Communication**s**.

78.    Such fiduciary duties included, but are not limited to, duties of care, loyalty, honesty, and fidelity to Jumpstart Communication**s**, and a duty to refrain from usurping the corporate opportunities of Jumpstart Communication**s**.

79.     Defendant Jumper has breached his fiduciary duties to Jumpstart Communications.

80.     Defendant Jumper's conduct was willful, wanton, reckless, and/or undertaken with a callous disregard for the best interests of Jumpstart Communications.

81.     As a direct and proximate result of Defendant Jumper's actions, Plaintiff suffered damages.

**COUNT SIX**
**(Tortious Interference with Contract – Ryan V. Jumper and**
**The Jumper Group LLC f/k/a Jumpstart Communication LLC)**

82.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

83.     Plaintiff has valid and enforceable contracts with its customers.

84.     Defendants had knowledge of Plaintiff's contracts.

85.     Defendants induced Plaintiff's customers to breach those contracts.

86.     Defendants' actions were without privilege or justification.

87.     Defendants acted purposely and with malice with the intent to injure Plaintiff.

88.     As a direct and proximate result of Defendants actions, Plaintiff suffered damages.

**COUNT SEVEN**
**(Tortious Interference with Business Relationship – Defendants Ryan V. Jumper and**
**The Jumper Group LLC f/k/a Jumpstart Communication LLC)**

89.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

90.     There existed a valid business relationship between Plaintiff and its current and prospective customers.

91.     Defendants knew of the existence of the business relationship between Plaintiff and its current and prospective customers.

92.     By their actions and inactions described above, Defendants intentionally interfered with Plaintiff's relationships.

93.     Defendants' actions were without privilege or justification.

94.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages.

## COUNT EIGHT
### (Civil Theft – Defendant Ryan V. Jumper)

95.     Plaintiff incorporates by reference all prior allegations as if fully restated herein.

96.     Defendant Jumper's actions constitute theft as defined in Indiana Code § 35-43-4-2(a).

97.     Defendant Jumper knowingly or intentionally exerted unauthorized control of proceeds/monies/funds owned wholly and exclusively by Plaintiff with the intent to deprive Plaintiff of their value or use.

98.     As a direct and proximate result of Defendant Jumper's actions, Plaintiff suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a.  Plaintiff is entitled to, among other relief, an order declaring that Defendants' actions infringe Plaintiff's trademark rights; a preliminary and permanent injunction; and an award of actual damages; Defendants' profits; enhanced damages; and reasonable attorneys' fees and the costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117; together with pre-judgment and post-judgment interest;

b. Plaintiff is entitled to, among other relief, a judgment in its favor for damages including, but not limited to, actual, compensatory, consequential, treble, and exemplary/punitive damages in an amount to be determined at trial; and reasonable attorneys' fees and the costs of this action; together with pre-judgment and post-judgment interest;

c. Disgorgement of the compensation paid to Defendant Jumper during the time he was engaged in wrongful conduct; and

d. For such further relief as this Court deems just and proper.

Respectfully submitted,

**CARSON LLP**

By:  /s/ Carrie E. Sheridan
J. Blake Hike #28601-02
Carrie E. Sheridan #38703-02
Brendan C. Ruff #39003-41
301 W. Jefferson Blvd., Ste. 200
Fort Wayne, IN 46802
Telephone: (260) 423-9411
Email: hike@carsonllp.com
        sheridan@carsonllp.com
        ruff@carsonllp.com

*Attorneys for Plaintiff Jumpstart Communications, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2025, a true and accurate copy of the foregoing document was electronically filed with the Court via the Court's CM/ECF filing system and served via the Court's CM/ECF filing system on the following:

David E. Bailey
Audrey M. Van Gilder
Fletcher Van Gilder, LLP
bailey@fvglaw.com
amvangilder@fvglaw.com

I hereby further certify that on January 15, 2025, a true and accurate copy of the foregoing document was submitted to a private process server for service on the following:

The Jumper Group LLC, formerly known as
Jumpstart Communication LLC
c/o its Statutory Agent
Ryan V. Jumper
6929 Hornbeam Circle
Brownsburg, Indiana 46112

Ryan V. Jumper
6929 Hornbeam Circle
Brownsburg, Indiana 46112

*/s/ Carrie E. Sheridan*